## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CARL FAUSTIN and
RODNEY WILSON,

          Plaintiffs,

   v.                         Case No.: 6:22-cv-1036-CEM-LHP

SEMINOLE COUNTY, FLA.,

          Defendant.

_____/

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
## AND MEMORANDUM OF LAW

Plaintiffs Carl Faustin and Rodney Wilson, by and through undersigned counsel, hereby move for a preliminary injunction enjoining the Defendant, Seminole County, Florida ("County" or "Defendant"), from enforcing the sections of Chapter 232, Code of Ordinances, Seminole County, Florida ("Ordinance") that violate Plaintiffs' First Amendment right to free speech. In support of this motion, Plaintiffs state:

1.      Plaintiffs seek a preliminary injunction to enjoin enforcement of §§ 232.3 (a), (c), (e) and (f) of the Seminole County Code of Ordinances.[1] These sections are facially unconstitutional, because they restrict charitable solicitation, which is constitutionally protected expression, on traditional public forums.

2.      The Ordinance is unconstitutional because it is a content-based

_____

[1] Plaintiffs do not challenge the private property provisions contained in County Code § 232-3(b) and (d).

1

regulation of speech that is not narrowly tailored to meet a compelling government interest. The Ordinance seeks to limit constitutionally protected speech and manners of expression, as it singles out one subject area of speech - charitable solicitation - for different treatment than speech on other subject matter.

3.     There exists a substantial likelihood that Plaintiffs' facial challenges to the constitutionality of the Ordinance will succeed on the merits; indeed, regulations enacted by other cities across the country that contain nearly identical language to the Ordinance have been struck down as unconstitutional in violation of the First Amendment of the U.S. Constitution.

4.     The County directs law enforcement officers from the Seminole County Sheriff's Office to arrest individuals for soliciting charitable contributions on public streets, sidewalks, medians, and other public areas in Seminole County.

5.     Plaintiffs would like to ask individuals they encounter for food, money and similar necessities by soliciting on public sidewalks, along public streets, and in areas frequented by pedestrian traffic in the County, but are fearful of police harassment, citation, and arrest for doing so.

6.     If the requested preliminary injunctive relief is not issued, then Plaintiffs and other similarly situated homeless individuals will be subjected to further loss of their First Amendment rights, loss of liberty due to arrest and incarceration, and will continue to be chilled in their speech. Plaintiffs therefore face irreparable harm without adequate remedy at law.

7.      Granting the relief sought will not result in the imposition of greater harm to the County and such relief is in the public interest. Sheriff's deputies remain free to enforce other laws that ensure public safety and the safe, free, and convenient flow of pedestrian and vehicular traffic. An immediate cessation of enforcement of this unconstitutional ordinance will further the public interest in that it will protect and preserve the exercise of core First Amendment activity.

8.      Plaintiffs request that the Court waive the requirement of bond in Fed. R. Civ. P. 65(c). Public interest litigation such as this is a recognized exception to the bond requirement, especially where, as here, the posting of bond would cause significant hardship to Plaintiffs and the relief sought would not pose a hardship on the Defendant.

**WHEREFORE,** Plaintiffs move this Honorable Court for an Order preliminarily enjoining Seminole County, Florida from enforcing §§ 232.3 (a), (c), (e) and (f) of the County Code.

## <u>MEMORANDUM OF LAW</u>

## I.      INTRODUCTION

Soliciting charitable contributions is protected speech under the First Amendment of the U.S. Constitution. Yet, in Seminole County, Florida, it can be a crime for a person to ask for charitable contributions in traditional public forums such as streets, medians, sidewalks, and other public areas. The County has directed Sheriff's deputies to arrest individuals for soliciting charitable contributions under the pretense of public health, welfare and safety and to

3

prevent residents from being disturbed or disrupted. Tellingly, the Ordinance does not criminalize persons engaged in other forms of speech within the same public forums – such as a politician asking for votes or a person asking for directions. Violation of the Ordinance is punishable by a fine not exceeding $500.00 and/or imprisonment for up to 60 days. (ECF 1-3, § 232.7.)

By singling out solicitations of donations for differential treatment, the Ordinance is content-based and subject to strict scrutiny. Because it is not narrowly tailored to any compelling government interest, nor is it the least restrictive means of advancing any interest, the Ordinance is an unconstitutional restriction of free speech in violation of the First Amendment.

Plaintiffs are individuals experiencing homelessness and/or poverty who solicit charitable donations within the County. They wish to continue to engage in these activities and need to do so to contribute to their survival. The fear of arrest and prosecution, however, has significantly discouraged or hampered their ability to request donations. If the Ordinance is allowed to stand, the suppression of Plaintiffs' First Amendment rights and the rights of those similarly affected will continue unabated. A preliminary injunction is, therefore, necessary to protect Plaintiffs and others from the substantial threat of irreparable injuries while their claims are pending.

## II.   STATEMENT OF FACTS

### A. The County's Panhandling Ordinance, County Code Chapter 232

4

The Ordinance defines "panhandle" as

> to ask for, demand or solicit money, gifts or donations, either by words, bodily gestures, signs or other means. The terms panhandle, solicit and beg are synonymous in meaning. Panhandling is any solicitation made in person, requesting an immediate donation of money or other thing of value. Purchase of an item for an amount far exceeding its normal market value, under circumstances where a reasonable person would understand that the purchase is, in substance, a donation, is a donation for the purpose of this Chapter. Panhandling does not include passively standing or sitting with a sign or other indication that one is seeking donations at a location not prohibited by this Chapter and not in a manner prohibited by this Chapter.

(ECF 1-3, § 232.2.) Adopted on January 13, 2015, the Ordinance regulates panhandling based on location, § 232.3(e); obstruction of pedestrians, vehicles or traffic, §§ 232.3(a) and (c); and in connection with "aggressive" conduct, §§ 232.3 (a), (e) and (f). The Ordinance states that

> *Aggressive* means and includes, but is not limited to, approaching or following pedestrians, repetitive soliciting despite refusals, the use of abusive or profane language to cause fear and intimidation, unwanted physical contact, the intentional blocking of pedestrian and vehicular traffic, the touching or causing physical contact with a solicited person without that person's consent or threatening to make such contact, the intentional blocking of the entrance to any building or vehicle, the following behind, ahead or alongside a person who walks away from a solicitor after being solicited with the intent to intimidate or continue solicitation, the approaching of a solicited person in a manner that is intended to or is likely to cause a reasonable person to fear imminent bodily harm or the commission of a criminal act upon property in the person's possession or is intended to or is likely to intimidate a reasonable person into responding affirmatively to the solicitation, or the soliciting of a person while the solicitor is under the influence of alcohol or drugs in a manner which disrupts the peace. Aggressive includes, but is not limited to, by acting in a manner while committing an assault, by committing a battery, or in a manner which violates the provisions of this Chapter.

(ECF 1-3, § 232.2.)

5

According to the County, it passed the Ordinance due to the effect of panhandling on the health, welfare, and safety of the citizenry, the fear of crime, preserving access to and enjoyment of public spaces, and to prevent disturbing and disrupting residents and businesses. (ECF 1-3, § 232.1.) The Ordinance does not cite to or rely on any statistics, data, studies, or reports to support these justifications, nor did the County seek to address the problems it identified with less intrusive tools readily available to it that do not infringe upon protected speech. (*See generally id*.).

### B. Plaintiffs' First Amendment Activities

Plaintiffs are residents of Seminole County who do not have access to adequate sources of income, through employment or public benefits, to allow them to purchase necessities of life including food, shelter, or permanent housing. They do not have a fixed address, and when they cannot find a place to sleep inside, they sleep in the woods, on public sidewalks or in other public places. They engage in charitable solicitation by standing on public sidewalks in the County, or on the medians or shoulders of public streets, in areas frequented by pedestrians, near businesses, or near intersections. Charitable solicitation communicates Plaintiffs' need for food, money and other necessities while raising awareness about the existence of homelessness in the County and the people who are experiencing poverty. Through their requests for charity, they intend to convey that they are in need of assistance. They do not obstruct or otherwise interfere with traffic. They receive food, clothes, hygiene products and cash from drivers and passersby.

### C. <u>Enforcement of the Panhandling Ordinance</u>

The Ordinance has been enforced almost exclusively against people soliciting charitable donations in public places. (See Ex. 3, Summary of panhandling arrests in Seminole County.) Plaintiffs have been warned and threatened with arrest by Seminole County Sheriff's deputies for holding signs or making verbal requests for charity on public property to drivers and pedestrians in the County. (Ex. 1, Declaration of Carl Faustin, ¶¶ 11-12; Ex. 2, Declaration of Rodney Wilson, ¶¶ 12-13.) The County has enforced 130 panhandling violations through arrest and citation since the Ordinance was enacted. (Ex. 3.) Collectively, individuals exercising their First Amendment right to solicit charity in Seminole County have been sentenced to approximately 858 days in jail and been assessed more than $39,147 in court costs and fines after being arrested/cited for violations of the Ordinance.[2] *Id.*

## III. PLAINTIFFS MEET THE STANDARD FOR GRANTING PRELIMINARY INJUNCTION

A district court may issue preliminary injunctive relief when: (1) there is "a substantial likelihood [the movant] will succeed later on the merits"; (2) they "will suffer an irreparable injury absent preliminary relief"; (3) the injury likely "outweighs any harm that its opponent will suffer as a result of an injunction"; and (4) preliminary relief would not "disserve the public interest." *Scott v. Roberts*, 612 F.2d 1279, 1290 (11th Cir. 2010). The first factor is generally the most important,

---

[2] These totals are based on a review of Seminole County Court records from the 130 arrests and citations listed in Ex. 3.

and requires only "likely" or "probable" success, rather than certainty. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). The movant bears the burden of proving entitlement to injunctive relief. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

### A. <u>Plaintiffs are Likely to Succeed on the Merits of their Claims.</u>

It is firmly established that the "solicitation of charitable contributions is protected speech" under the First Amendment to the U.S. Constitution. *Riley v. Nat'l Federation of the Blind*, 487 U.S. 781, 789 (1988); s*ee also Smith v. City of Ft. Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999) ("Like other charitable solicitation, begging is speech entitled to First Amendment protection."). Moreover, the speech regulated by the Ordinance occurs within a public forum— the County's streets, sidewalks, medians, and public areas. The Supreme Court "long ago recognized that members of the public retain strong free speech rights when they venture into public streets and parks, 'which 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009) (citation omitted). Plaintiffs are likely to succeed in showing that County Code Chapter 232 imposes unconstitutional speech restrictions, both on its face and as applied to Plaintiffs.

### i. *Plaintiffs' speech occurs in traditional public forums.*

Plaintiffs' speech occurs alongside streets and on sidewalks, and sometimes on medians. (*See* Ex. 1, ¶ 6; Ex. 2, ¶¶ 6-7.) Streets, sidewalks, public rights-of-way, and parks are "quintessential traditional public forums" for speech. *U.S. v. Grace*, 461 U.S. 171, 177 (1983). In fact, "all public streets," *as a class*, "are properly considered traditional public fora" and "[n]o particularized inquiry into the precise nature of any street is necessary." *Frisby v. Schultz*, 487 U.S. 474, 481 (1988). Solicitation on medians also implicates First Amendment protections because such spaces share fundamental characteristics with public streets, sidewalks, and parks. *See, e.g., McGraw v. City of Okla. City*, 973 F.3d 1057, 1068 (10th Cir. 2020); *Satawa v. Macomb Cty. Rd. Comm'n*, 689 F.3d 506, 520 (6th Cir. 2012); *Cutting v. City of Portland*, 802 F.3d 79, 83 (1st Cir. 2015).

### ii. *The Ordinance is a content-based restriction.*

By defining panhandling as "any solicitation made in person, requesting an immediate donation of money or other thing of value," § 232.2, the Ordinance singles out a particular topic of speech for regulation. The ban applies *only* to those requesting immediate donations or items of value. No other type of speech, such as seeking support for political, religious or social causes, is subject to the law. Thus, whether the Ordinance's criminal penalties apply depends entirely on the content of the message.

Because the Ordinance treats those who request donations differently from those who seek to communicate other messages, it is a content-based restriction on speech subject to strict scrutiny. Speech restrictions are content-based when

they "single out any topic or subject matter for differential treatment." *City of Austin, Tex. v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 71 (2022). This is so *even if* the law does not favor one viewpoint over another. *Reed v. Town of Gilbert*, 576 U.S. 155, 169 (2015) ("a speech regulation targeted at specific subject matter is content-based *even if it does not discriminate among viewpoints within that subject matter*") (emphasis added). Since *Reed*, courts have unanimously found that anti-panhandling ordinances were content-based restrictions on speech. *See Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019); *Henagan v. City of Lafayette*, No. 6:21-CV-03946, 2022 WL 4546721, at *3 (W.D. La. Sept. 27, 2022); *Messina v. City of Ft. Lauderdale*, 546 F. Supp. 3d 1227, 1242-43 (S.D. Fla. 2021) (collecting cases).

Like the sign ordinance in *Reed*, the Ordinance discriminates based on topic and subject matter. Under the Ordinance, politicians can solicit signatures on petitions, ticket sellers can offer event tickets, or clergy can hold signs reading "God Bless" and advertise a congregation at a busy intersection without fear of arrest. (ECF 1-3 § 232.2 (applying restrictions to requests for donations but not purchases of goods unless "under circumstances where a reasonable person would understand that the purchase is, in substance, a donation").) But when Plaintiffs stand at the same intersection with a sign that reads "Homeless & hungry, God Bless," the police threaten to take them to jail. Whether Plaintiffs violate the Ordinance depends on who they are and what they say, not when (time), where (place), or how (manner) they say it. *See Holder v. Humanitarian L. Project,* 561

U.S. 1, 27 (law is content-based if a violation "depends on what [Plaintiffs] say"); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) (First Amendment prohibits "restrictions distinguishing among different speakers, allowing speech by some but not others"); *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2347 (2020) (law focusing on whether one is speaking about a particular topic and not simply on whether the caller is engaged in a particular economic activity is content-based).

Because the Ordinance singles out a single topic or subject matter—requests for donations—it is a content-based speech restriction that is presumptively unconstitutional and subject to strict scrutiny.

### iii.   *The Ordinance cannot withstand strict scrutiny.*

To withstand strict scrutiny, the County must prove that the Ordinance "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 156 U.S. at 171. The County must also show that the law is the "least restrictive means" of accomplishing that vital interest. *See U.S. v. Playboy Entm't Grp., Inc.,* 529 U.S. 803, 813 (2000) ("If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."). Moreover, because "'content-based regulations are presumptively invalid,'… the Government bears the burden to rebut that presumption." *Id.* at 817 (quotation omitted).

a. The Ordinance does not further compelling government interests.

The County cannot meet its burden because the Ordinance does not serve a compelling government interest. The stated purpose of the Ordinance is preserving

access to and enjoyment of public spaces, preventing people and businesses from experiencing disturbing or disruptive speech, and the health, welfare and safety of the public. (ECF 1-3, § 232.1.)

The County's interest in protecting commercial interests or shielding the public at large from unwanted or undesirable speech, however, is not a compelling government interest warranting a ban on all requests for charitable donations. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969) (speech cannot be restricted based on "mere desire to avoid ... discomfort and unpleasantness"); *McCullen v. Coakley*, 573 U.S. 464, 476 (2014) (fact that individual using the public streets and sidewalks may encounter an "uncomfortable message" is a "virtue, not a vice"); *McLaughlin*, 140 F. Supp. 3d at 177, 188-89 (D. Mass. 2015) (promotion of business is at most a significant and substantial governmental interest, but not a compelling governmental interest). Protecting listeners from panhandlers, or any kind of speech they do not want to hear, is not and never has been a compelling government interest. *Ohio Citizen Action v. City of Mentor-On-The-Lake*, 272 F. Supp. 2d 671, 685 (N.D. Ohio 2003) ("While the government's interest in minimizing annoyance is legitimate, it is not . . . compelling enough to form the basis for a content-based restriction on free speech."). In enacting the Ordinance to purportedly promote "access to and enjoyment of public places," § 232.1(d), the County is essentially using the Ordinance to remove disapproved speakers and their speech. *See Sorrell*, 564 U.S. at 565. Such justification is not a compelling government interest.

Assuming arguendo that public health and safety are compelling governmental interests, the Ordinance does not further those interests. . The County offered no evidence to support its findings that the speech prohibited by the Ordinance is a threat to the health, welfare and safety of the public. The County may not simply conclude that Ordinance will further its interests; instead, it "must rely on at least *some* pre-enactment evidence that the regulation would serve its asserted interests." *Buehrle v. City of Key West*, 813 F.3d 973, 979 (11th Cir. 2015). Moreover, many of the Ordinance's provisions go beyond the County Commissioners' findings and ban conduct that is not a threat to health and safety, such as merely approaching a person on the sidewalk or making a second request after a refusal. Thus, the Ordinance does not further the governmental interests that the County has asserted to justify its passage.

### b. The Ordinance is not narrowly tailored.

Even if the County can show that the Ordinance furthers a compelling government interest, the Ordinance fails the narrow tailoring analysis. Laws are not narrowly tailored where they "burden substantially more speech than is necessary to further the government's legitimate interests[,]" and are therefore fatally over-inclusive. *McCullen*, 573 U.S. at 486. Laws may also fail the narrow tailoring requirement when they are under-inclusive, in that they single out a certain type of speech but do not regulate others that are equally problematic. *See Reed,* 576 U.S. at 172; *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 802 (2011) (law restricting the sale of violent video games to minors was "wildly

13

underinclusive" because the state "declined to restrict" other forms of media that could be equally dangerous to children, and this alone caused the law to fail strict scrutiny).

The Ordinance is not narrowly tailored because it is both over- and under-inclusive, or otherwise prohibits conduct that is already within the ambit of existing criminal laws. The Ordinance contains regulations of speech based on location, § 232.3(e); obstruction of pedestrians, vehicles or traffic, §§ 232.3(a) and (c); and in connection with "aggressive" conduct, §§ 232.3 (a), (e) and (f). (ECF 1-3.) Each category, addressed more fully below, suffers from the same infirmities and is not narrowly tailored. *See Scott v. City of Daytona Bch.*, No. 6:22-cv-2192-WWB-RMN, 2023 WL 6324956, at *5 (M.D. Fla. Aug. 29, 2023) (holding similar restrictions based on location, traffic and conduct are unlikely to survive strict scrutiny and ordering ordinance preliminarily enjoined).

1.    *Location-based restrictions*

The Ordinance prohibits aggressive panhandling at public locations throughout the County, such as at bus or train stops, roads, streets, and rights-of-way, in vehicles on streets, in parks, fairgrounds, and sporting facilities, in County-owned parking lots and parking garages, within 25 feet of an ATM, and within 1000 feet of a school bus stop when children are present. (ECF 1-3, § 232.3(e).) Bans that prohibit panhandling in specific locations are over-inclusive because they prohibit protected speech even in situations where it is not demonstrably more dangerous. *Messina*, 546 F. Supp. 3d at 1244-45; *see also Norton v. City of Springfield, Ill.*,

806 F.3d 411, 412-13 (7th Cir. 2015) (striking down a panhandling ban in "downtown historic district"); *Homeless Helping Homeless, Inc., v. City of Tampa, Fla.*, No. 8:15-CV-1219-T-23AAS, 2016 WL 4162882, at *5 (M.D. Fla. Aug. 5, 2016) (striking down solicitation ban in "Downtown/Ybor Area Prohibited Zone"); *McLaughlin*, 140 F. Supp. 3d at 196 (striking down 20-foot no-panhandling zones around banks, ATMs, transportation facilities, and other public areas). If enacted to increase the comfort of the County's residents, as noted above, the Ordinance would not serve a compelling government interest. If enacted to promote public safety, the Ordinance is poorly targeted. There is no evidence that panhandling is any more dangerous in the affected areas. *See Messina*, 546 F. Supp. 3d at 1245 ("In these areas, perhaps, panhandling is more *irritating*. But there's no reason to think it any more *dangerous*."); *McLaughlin*, 140 F. Supp. 3d at 195 ("[W]hile it may be more bothersome, and even in some sense more coercive for a person to be panhandled when they cannot, or find it difficult to leave, it is not demonstrably more dangerous."); *Browne v. City of Grand Junction,* 136 F. Supp. 3d 1276, 1293 (D. Col. Sept. 30, 2015) (solicitation is not a threat to safety "simply because it occurs within 20 feet of an ATM"). Nor is there any evidence to support the County's choice of distances in the Ordinance; there is no reason why panhandling 900 feet away from a school bus stop -- or 100 feet away, for that matter -- would be any more of a problem than 1001 feet away.

Moreover, the Ordinance is fatally under-inclusive because it penalizes only certain types of activities that generate an alleged safety hazard, while leaving

others unregulated. For example, the Ordinance prohibits aggressive panhandling in any of the defined locations but does not bar aggressively asking for a signature on a petition. *See McLaughlin*, 140 F. Supp. 3d at 191. It also prevents requests for charity in some areas, such as roads and sporting facilities, "where constant crowds might be expected to deter dangerous conduct, but it says nothing" about such requests "in back-alleys, where there are fewer people to prevent or deter violent attacks." *Messina*, 546 F. Supp. at 1244. Indeed, Plaintiffs choose locations to panhandle precisely because there are many people around. (Ex. 1, ¶ 7; Ex. 2, ¶ 6.)

### 2.   *Traffic restrictions*

In addition to locations, the Ordinance provides that a person may not "interfere" with pedestrians or motor vehicles by obstructing traffic or through aggressive panhandling on roads or rights-of-way, including sidewalks. (ECF 1-3, § 232.3(a)). Moreover, a person may not "obstruct, impede or interfere with the movement of pedestrians or vehicles for the purpose of panhandling" in public buildings, the land around public buildings, and public transportation areas. (ECF 1-3, § 232.3(c).) Regulations that restrict charitable solicitation but not other types of speech have been found unconstitutional even where the state interest is to promote traffic safety. *Vigue v. Shoar,* 494 F. Supp. 3d 1204, 1224-25 (M.D. Fla. Oct. 12, 2020); *Messina*, 546 F. Supp. 3d at 1248. Here, just as in *Messina*, there is no explanation for why panhandling is inherently more dangerous than other speech on or near roadways or in public buildings. Aggressive panhandling is banned, but aggressively approaching cars to talk about politics, the weather, or

16

anything else is allowed. Interfering with the movement of pedestrians to panhandle is prohibited, but impeding people on the street for other purposes is not. Such restrictions on charitable solicitation based on the potential for traffic hazards or impediments are under-inclusive, as there is no legitimate reason to single out charitable solicitation from other types of speech—political or commercial solicitation that creates a traffic hazard is "equally dangerous." *See Rodgers*, 942 F.3d at 457; *Bischoff v. Fla.*, 242 F. Supp. 2d 1226, 1257 (M.D. Fla. 2003). Thus, these sections are not narrowly tailored and violate the First Amendment.

### 3.   *"Aggressive" and conduct-related provisions*

Like the other challenged provisions, the Ordinance's prohibitions on "aggressive" panhandling are over-inclusive by barring what is deemed "aggressive" panhandling requests throughout the County. (ECF 1-3, § 232.3(a), (e) and (f).) Aggressive panhandling ordinances "often sweep in much more speech than is necessary to promote public safety, including speech that is entirely innocuous." *Messina*, 546 F. Supp. 3d at 1240; *see also McLaughlin*, 140 F. Supp. 3d at 194, 195 (giving panhandlers only one opportunity to convey their message, without allowing follow up, was more restrictive than necessary). For example, the Ordinance prohibits continued appeals after the initial request is turned down. (ECF 1-3, § 232.2.) However, there is nothing inherently dangerous about a second request. *Messina*, 546 F. Supp. 3d at 1245; *Browne,* 136 F. Supp. 3d at 1293. Moreover, aggressive panhandling provisions are under-inclusive in that they omit

conduct that is genuinely threatening. *Id.* (these provisions "would apply to the batterer who first asked for pennies but not to the activist who, before the assault, asked the victim to join the Communist Party or the Ku Klux Klan").

Nor is the Ordinance the least restrictive means of achieving the County's stated interests. Panhandling provisions that make conduct already punishable by criminal statutes subject to additional penalties because of its connection with protected speech fail the narrow tailoring requirement. *See McLaughlin*, 140 F. Supp. 3d at 193 ("The City may not deem criminal activity worse because it is conducted in combination with protected speech, and it certainly may not do so in order to send a message of public disapproval of that speech on content based grounds."); *see also Messina*, 546 F. Supp. 3d at 1245; *Browne,* 136 F. Supp. 3d at 1293-94. Aggressive panhandling includes approaching a person in such a manner that causes the person to fear either imminent bodily injury or the commission of a crime, using profane language to cause fear or intimidation, touching or causing physical contact with a solicited person without consent, blocking a solicited person from passing, blocking the entrance to a building or vehicle, intimidating a solicited person to accede to demands, or soliciting while under the influence of drugs or alcohol in a manner which disrupts the peace. (ECF 1-3, § 232.2.) These activities are already punishable through existing state criminal laws, including assault, Fla. Stat. § 784.011, battery, Fla. Stat. § 784.03, disorderly conduct, Fla. Stat. § 877.03, and disorderly intoxication, Fla. Stat. § 856.011,, which the County could enforce to address harmful conduct. The Ordinance's imposition of harsher

penalties for panhandlers than for others who commit the same crimes does not constitute the least restrictive means of promoting public safety.

The Ordinance's other conduct-related provisions suffer from the same infirmities. Prohibitions against panhandling "by blocking the path of the person solicited," §232.3(f)(1), "by using obscene, profane or abusive language," §232.3(f)(2), "in a group of two or more persons which would encircle the person being solicited," §232.3(f)(3), and "by any statement, gesture, or other communication which a reasonable person … would perceive to be a threat," §232.3(f)(4), are not narrowly tailored to the harms that purportedly justify them. Laws against assault, battery, and disorderly conduct already address these issues. The County could simply enforce them, rather than banning speech. These provisions also are under-inclusive in that they ban such conduct in regard to charitable donations, but not other types of speech. Unwanted touching and disorderly intoxication are equally problematic whether the speaker is asking for a donation or is conveying any other message.

### iv. *The Ordinance Fails to Meet Even Intermediate Scrutiny*

Even if the Ordinance is deemed content-neutral, it still fails under the First Amendment. Content-neutral restrictions on speech must be narrowly tailored to a significant government interest and the County must show it seriously undertook to address the problem with less intrusive tools readily available to it. *McCullen*, 573 U.S. at 494. As an initial matter, it should be noted that the County's purported interest in protecting the public from "disturbing and disruptive speech,"

§232.1(4), is not significant. *McCullen*, 573 U.S. at 476 (fact that individual using the public streets and sidewalks may encounter an "uncomfortable message" is a "virtue, not a vice"). Even assuming the other interests raised by the County are significant, the Ordinance fails both the narrow tailoring and less intrusive tools inquiries.

Plaintiffs have already described how the Ordinance "sweep[s] in much more speech than is necessary to promote public safety—including speech that is entirely innocuous—while omitting conduct that's genuinely threatening." *Messina*, 546 F. Supp. 3d at 1240. A review of the 130 arrests under the Ordinance identified by Plaintiffs reveals that virtually all were for peaceful requests of charity, such as holding a sign. (Ex. 3.)

Nor did the County attempt to address the problem with tools readily available to it that were less burdensome on speech. As noted above, the County could enforce existing laws, including state statutes prohibiting trespass, §§ 810.08 & 810.09, disorderly conduct and breach of the peace, § 877.03, disorderly intoxication, § 856.011, assault and battery, §§ 784.011 & 784.03, or obstruction of traffic, § 316.2045, Fla. Stat. These laws are more narrowly tailored to address the proffered objectionable conduct. Indeed, as other courts reviewing charitable solicitation ordinances have determined, none of the provisions of the Ordinance are narrowly tailored, and thus fail even intermediate scrutiny.

## B. **Plaintiffs Will Suffer Irreparable Injury**

Ordinances that violate the First Amendment are "per se irreparable injur[ies]." *LaCroix v. Town of Ft. Myers Bch., Fla*., 38 F.4th 941, 954-55 (11th Cir. 2022) (citation omitted). "[E]ven a temporary infringement of First Amendment rights constitutes a serious and substantial injury." *Scott*, 612 F.3d at 1297 (citation omitted); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Vigue v. Shoar*, Case No. 3:19-CV-186-J-32, 2019 WL 1993551, at *2 (M.D. Fla. May 6, 2019) ("when First Amendment freedoms are at stake, courts regularly find that plaintiffs have established that they will sustain irreparable injury").  Plaintiffs will suffer irreparable harm if an injunction is not issued. Plaintiffs have been, and continue to be, threatened with arrest for the content of their speech. They have curtailed their speech in order to avoid arrest. So long as the Ordinance is in effect, the County has unbridled discretion to prohibit the protected speech activity of Plaintiffs and other individuals. *See Univ. Books & Videos, Inc. v. Metro. Dade Cnty*., 33 F. Supp. 2d 1364, 1373 (S.D. Fla. 1999), citing *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Amer. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("Because chilled speech cannot be compensated by monetary damages, an ongoing violation of the First Amendment constitutes irreparable injury."). The irreparable injury to Plaintiffs is clear.

### C. **The Threatened Injury Outweighs Any Damage to Defendant**

Courts must weigh the harm that the plaintiff likely will sustain if the injunction were denied against that which the defendant will suffer if the injunction is issued. *Howard v. City of Jacksonville*, 109 F. Supp. 2d 1360, 1362 (M.D. Fla. 2000). Here, in contrast to the past and ongoing violations of Plaintiffs' First Amendment rights, Defendant will not suffer injury if it is prevented from enforcing illegal restrictions on First Amendment rights. In the interim, Defendants are free to enforce other state and local laws to address the harms it has identified. *See, e.g., Booher v. Marion Cnty.*, No. 507cv00282, 2007 WL 9684182, at *4 (M.D. Fla. Sept. 21, 2007).

### D. <u>**A Preliminary Injunction is in the Public Interest.**</u>

A preliminary injunction would not adversely affect the public interest. The protection of constitutional rights is always in the public interest. *Lebron v. Wilkins*, 820 F. Supp. 2d 1273, 1292 (11th Cir. 2013) ("perhaps no greater public interest exists than protecting a citizen's rights under the constitution"); *Howard*, 109 F. Supp. 2d at 1365 ("The public interest is served by the maintenance of First Amendment freedoms and could not possibly be served by the enforcement of an unconstitutional Ordinance."). Because the public has no interest in enforcing an unconstitutional speech restriction, an injunction against enforcement cannot "disserve" the public interest. *See Scott*, 612 F.3d at 1297; *see also Otto v. City of Boca Raton, Fla.*, 981 F.3d 854, 870 (11th Cir. 2020) (content-based regulations that directly penalize protected speech "meet the remaining requirements as a necessary legal consequence of our holding on the merits").

## IV.    Waiver of the Bond Requirement

Plaintiffs request this Court waive the bond requirement under Fed. R. Civ. P. 65(c). Bond is not required where the party seeking the injunction has high probability of success, an injunction is sought against a municipality that would not incur significant cost, and requiring payment would injure the constitutional rights of the plaintiff or the public. *Univ. Books & Videos, Inc.*, 33 F. Supp. 2d at 1374. Public interest litigation is a recognized exception to the bond requirement. *Vigue*, 2019 WL 1993551, at \*3. Florida District Courts have waived bond requirements in similar litigation. *See id.* (waiving bond for indigent and homeless plaintiff challenging constitutionality of state statutes regulating charitable solicitation on roadways); *Booher*, 2007 WL 9684182, at \*4 (waiving bond for indigent and homeless plaintiff challenging constitutionality of county ordinance regulating charitable solicitation).

## V.    Conclusion

Plaintiffs respectfully request that this Court enjoin enforcement of §§ 232.3 (a), (c), (e), and (f) of the Seminole County Code of Ordinances until this case is resolved, without requiring them to post a bond.


Dated: June 5, 2024                                Respectfully submitted,

                                /s/ Daniel Marshall
                                **Daniel Marshall**, Fla. Bar. No. 617210
                                Dan.Marshall@southernlegal.org
                                LEAD COUNSEL
                                **Jodi Siegel**, Fla. Bar No. 511617
                                Jodi.Siegel@southernlegal.org

**Chelsea Dunn**, Fla. Bar No. 1013541
Chelsea.Dunn@southernlegal.org
**Southern Legal Counsel, Inc.**
1229 NW 12th Avenue
Gainesville, FL 32601-4113
(352) 271-8890

**ATTORNEYS FOR PLAINTIFFS**